IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF: | : |
| | : CIVIL ACTION  No. 13-2793 |
| STANLEY J. SEGAL, | : |
| | : |
| Appellant, | : BANKRUPTCY No. 10-16822 |
| | : |
| v. | : |
| | : |
| ROBERT H. HOLBER, TRUSTEE FOR STANLEY J. SEGAL | : |
| | : |
| Appellee. | : |

### MEMORANDUM

**Juan R. Sánchez, J.**                                                                                             **March 20, 2014**

      Debtor-Appellant Stanley J. Segal (Debtor), appeals from an April 3, 2013, order of the United States Bankruptcy Court for the Eastern District of Pennsylvania (Order) granting the application of Robert H. Holber, the trustee of Segal's Chapter 7 bankruptcy estate (Trustee), to employ the law firm Haviland Hughes as special litigation counsel to the Trustee in the underlying bankruptcy proceedings (Application).  The Debtor argues the bankruptcy court erred in granting the Application for three reasons: (1) there was no legitimate underlying basis for appointing special counsel in the first place; (2) the engagement of counsel will cause excessive payment for services and create an unnecessary expense; and (3) appointed counsel has a conflict of interest with respect to the matters for which it was employed.  In response, the Trustee refutes each of the Debtor's arguments on the merits, but also maintains this Court should not reach these questions because it lacks appellate jurisdiction.  For the following reasons, this Court concludes the Order is interlocutory, and declines to exercise its discretionary jurisdiction to hear an interlocutory appeal.  The appeal will therefore be dismissed for lack of jurisdiction.

**FACTS**

On August 13, 2010, the Debtor filed a voluntary Chapter 7 bankruptcy petition. The schedules accompanying the petition disclosed the Debtor's assets and liabilities, including the right to collect payments under a consulting agreement (Consulting Agreement or Agreement). On Schedule B, which lists personal property, the Debtor characterized the possibility of collecting monies owed under the Consulting Agreement as "doubtful," and listed the value of the asset as "unknown." Ex. 6 (Schedule B to Bankr. Pet.).[1] He also listed the same asset—any remaining equity resulting from collection of monies owed under the Consulting Agreement—as exempt from the property of the estate pursuant to 11 U.S.C. § 522(d)(5). *Id.* (Schedule C to Bankr. Pet.).

On April 1, 2011, the Trustee filed objections to the exemptions claimed by the Debtor on Schedule C, including the exemption for any remaining equity resulting from the collection of monies owed under the Consulting Agreement. After negotiations, the parties entered into a Stipulation and Consent Order that was approved by the bankruptcy court on May 3, 2011. Pursuant to the stipulation, the Trustee and the Debtor agreed the Debtor's claimed exemption for the Consulting Agreement was limited to $410, the remaining amount available to the Debtor under § 522(d)(5). The stipulation further provided that if the Debtor sought to argue any monies allegedly owed under the Consulting Agreement were wages, the Trustee "shall have the right to file any further pleading in the [bankruptcy court] contesting such right of the Debtor to receive such Consulting Agreement payments." Ex. 9 ¶ 4(c) (Stipulation and Consent Order).

The Consulting Agreement arose out of the sale of a long-term care facility (Ashton Hall) by a company in which the Debtor was a principal shareholder. In the Agreement, executed on

---

[1] Citations to exhibits refer to exhibits in the appellate record filed with the Court on May 20, 2013, in connection with the Debtor's certificate of appeal.

April 25, 2008, the purchasers of Ashton Hall—Green Lion Group, LLC, and Capital Family Partners, LLC—agreed to pay the Debtor $1.9 million over ten years for his consulting services associated with the management of the facility.  The Consulting Agreement also included a payment schedule.  Two $250,000 dollar payments were to be made on May 28, 2008, and June 28, 2008, and the remaining $1.4 million was to be distributed via quarterly payments beginning on June 1, 2010.  Eliezer Friedman and Naftali Weinberger signed the Agreement as guarantors.

The Debtor filed his bankruptcy petition shortly after a company called Reliant Healthcare Management (Reliant) obtained a jury verdict against him on July 27, 2010, in the Philadelphia Court of Common Pleas, which resulted in a $1,829,260 judgment.  The jury found the Debtor conspired with others, including Weinberger and Friedman, to tortiously interfere with a management contract between Reliant and Ashton Hall.  The complaint in that action, filed on January 25, 2008, alleged the Debtor and his coconspirators interfered with and terminated Reliant's contract with Ashton Hall because the sale of Ashton Hall required termination of the contract with Reliant.

On December 23, 2010, acting as the Debtor's primary creditor in the Chapter 7 proceedings, Reliant filed a motion for an examination of the Debtor under Federal Rule of Bankruptcy Procedure 2004, seeking to explore the Debtor's involvement in the fraudulent concealment of assets through the Consulting Agreement and other transactions associated with the Ashton Hall sale.  The bankruptcy court granted Reliant's motion for the Rule 2004 Exam, which was held on March 10, 2011.  During the examination, Reliant, then represented by attorney Mark L. Rhoades (currently of Haviland Hughes), questioned the Debtor extensively regarding his personal property and any rights he may have had under the Consulting Agreement.  The Debtor testified the sale of Ashton Hall was valued at $8.45 million.  Ex. 24

3

(Rule 2004 Examination Tr. at 123). When the sale closed on April 27, 2008, the Debtor received nothing. He believed at the time that the only money he would realize from the sale was through the Consulting Agreement. Although the Debtor may have received one of the first two $250,000 payments under the Agreement, none of the subsequent quarterly payments scheduled to begin on June 1, 2010, were made, and the Debtor believed the Consulting Agreement had been terminated. *Id.* (Rule 2004 Examination Tr. at 61-62, 154, 160). The Debtor also stated he did not intend to pursue litigation to recover any monies owed under the Consulting Agreement because he did not have the money to fund a lawsuit. *Id.* (Rule 2004 Examination Tr. at 166-67).

On January 16, 2012, the Trustee issued a report of no distribution, stating the Debtor had "no property available for distribution over and above that exempted by law." *See* Docket of Bankr. No. 10-16822. The Trustee contends the issuance of the no distribution report was based, in large part, on representations by the Debtor that any claims he had under the Consulting Agreement were without value and the Debtor did not intend to pursue those claims. By order of June 26, 2012, the bankruptcy court discharged the Debtor and closed the Chapter 7 case. Three days after receiving his discharge, the Debtor commenced an action in the Eastern District of Pennsylvania against Friedman and Weinberger for breach of contract in connection with the failure to make the payments owed under the Agreement (the Contract Action).[2]

---

[2] The Contract Action was presided over by the Honorable C. Darnell Jones, II. Pursuant to Local Civil Rule 40.1(b)(3), when filing any proceeding, a party is required to indicate whether the proceeding before the court is related to any other proceeding currently pending or terminated within the previous year. When the Debtor filed the instant appeal, he failed to advise the Court that this appeal was related to the Contract Action previously pending before Judge Jones. Even if the instant appeal should have been assigned to Judge Jones as a related case to the Contract Action, in the interest of efficiency and to avoid burdening the parties with a lengthy delay, the Court declines to transfer the appeal at this time.

In October 2012, the district court transferred the Contract Action to the bankruptcy court "for a determination as to whether or not the subject of the contract at issue was properly reported to said court and considered by the Trustee during the pendency of [the Debtor's] Chapter 7 Petition." Ex. 21. By order of February 6, 2013, the bankruptcy court reopened the Debtor's Chapter 7 case, and directed the Office of the United States Trustee to appoint a Chapter 7 trustee.[3] The next day, Holber was reappointed to serve as the Trustee. The Trustee then sought to employ Haviland Hughes as special counsel to assist in determining whether the fees pursuant to the Consulting Agreement should be considered property of the bankruptcy estate. In opposing the Application, the Debtor argued, among other things, that the fees pursuant to the Consulting Agreement are wages that are not property of the bankruptcy estate because they were not yet earned by the Debtor or owed to the Debtor at the time he filed his bankruptcy petition. *See* 11 U.S.C. § 541(a)(6).

On April 3, 2013, the bankruptcy court entered the Order approving the Trustee's Application to employ Haviland Hughes as special counsel to the Trustee in the Chapter 7 proceedings. The Order states in full:

> AND NOW this 3rd day of April 2013, upon consideration of the Application of Robert H. Holber, Chapter 7 Trustee (the "Trustee") of the bankruptcy estate of Stanley J. Segal (the "Debtor") to employ Haviland Hughes, as special litigation counsel to the Trustee (the "Application"), in this bankruptcy case, and it and the Court being satisfied that Haviland Hughes has no interest adverse to the bankruptcy estate with respect to the matters for which it is to be employed, and further that Haviland Hughes' retention is in the best interest of the creditors; it is hereby:
>
> ORDERED that the Application is granted; and it is further

---

[3] The February 6, 2013, order, which is not on appeal, also denied the Debtor's January 18, 2013, motion to transfer the Contract Action back to the Eastern District of Pennsylvania.

>ORDERED that the Trustee is hereby authorized to retain and employ Haviland Hughes, as special counsel to the Trustee in the within proceeding under Chapter 7 of the United States Bankruptcy Code; and it is further
>
>ORDERED that compensation for professional services of Haviland Hughes shall be a contingency fee of fifty percent (50%) of any and all recovered collections plus costs; and it is further
>
>ORDERED that any such compensation shall be paid only upon further application and approval of this Court.

Ex. 2. This Order is the subject of the instant appeal.

**DISCUSSION**

As a threshold matter, the Court must determine whether it has jurisdiction to hear this appeal. District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts, and, with leave of the district court, from interlocutory orders and decrees of the bankruptcy courts. 28 U.S.C. § 158(a)(1), (3). The Trustee contends the Order is insufficiently final to confer appellate jurisdiction upon the Court under § 158(a)(1) and the Court should decline to exercise its discretion to hear the appeal under § 158(a)(3).

Under the traditional finality standard generally applicable to civil litigation, "only those orders that dispose of all issues as to all parties to the case are considered final." *In re Prof'l Ins. Mgmt.*, 285 F.3d 268, 279 (3d Cir. 2002). Where "considerations unique to bankruptcy proceedings" exist, however, the Third Circuit applies a more flexible, relaxed, and pragmatic standard of finality. *Commerce Bank v. Mountain View Vill., Inc.*, 5 F.3d 34, 37 (3d Cir. 1993); *see also In re Amatex Corp.*, 755 F.2d 1034, 1039 (3d Cir. 1985) (explaining because "[b]ankruptcy cases frequently involve protracted proceedings with many parties . . . [t]o avoid the waste of time and resources that might result from reviewing discrete portions of the action only after a plan . . . is approved, courts have permitted appellate review of orders that in other contexts might be considered interlocutory"). Adherence to the traditional, less flexible standard

of finality is, however, still required absent "countervailing bankruptcy considerations." *Commerce Bank*, 5 F.3d at 37.

Because two standards of finality are potentially applicable, this Court must first determine which standard to employ. The Trustee argues the traditional finality standard should apply because there are no countervailing bankruptcy considerations present that justify a departure from the stricter standard. In this regard, the Trustee urges the Court to follow the district court's ruling in *In re Allegheny International, Inc.*, 107 B.R. 518 (W.D. Pa. 1989). The order on appeal in *Allegheny* involved the bankruptcy court's appointment of special litigation counsel to represent a creditor committee for the purpose of pursuing an adversary proceeding. *Id.* at 521-22. The appointment was challenged on the basis that counsel had a conflict of interest. *Id.* at 520. In dismissing the appeal, the court reasoned that the traditional standard of finality applied because the bankruptcy court order did "not fully resolve the adversary proceeding involved, but instead allows the adversary litigation to proceed." *Id.* at 522. The court further noted that issues regarding disqualification of counsel due to conflicts of interest are not unique to bankruptcy, and, in any event, "procession of [the] litigation will illuminate whether an actual conflict of interest exists." *Id.*

Despite sharing certain facial similarities with the case at hand, *Allegheny* is distinguishable because although the order at issue in that case was entered in the main bankruptcy proceeding, the district court found it primarily affected the adversary proceeding. Appeals of orders associated with adversary actions generally prompt adherence to the traditional standard of finality. *See In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008) ("[D]espite th[e] relaxed view of finality in the bankruptcy setting as a whole, the general antipathy toward piecemeal appeals still prevails in individual adversary actions."); *In re Natale*, 295 F.3d 375, 380 (3d Cir.

2002) ("[I]n assessing the finality of a bankruptcy court order adjudicating a specific adversary proceeding, we apply the same concepts of appealability as those used in general civil litigation" (citation omitted)).  Outside the adversary context, however, Third Circuit case law suggests the relaxed standard should apply when assessing the finality of orders relating to the appointment or disqualification of counsel.  *See e.g.*, *In re BH & P, Inc.*, 949 F.2d 1300, 1306-07 (3d Cir. 1991) (treating as final under flexible bankruptcy approach district court order affirming bankruptcy court order removing trustee and disqualifying trustee's counsel);[4] *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 104-05 (3d Cir. 1988) (treating as final under flexible bankruptcy approach district and bankruptcy court orders granting nunc pro tunc approval of employment of a broker).[5]

---

[4] While the court's approach in *BH & P* is likely equally applicable to assessing the finality of a bankruptcy court order, as the concurring opinion notes, the court's reasoning in that case applied only to assessing the finality of the district court's order.  *See BH & P*, 949 F.2d at 1320 n.3 (Hutchinson, J. concurring) ("Although neither this Court nor the district court examined the finality of the bankruptcy court's order removing the trustee and his counsel and denying them compensation under 11 U.S.C.A. § 158(a), this area of our jurisprudence may also warrant re-examination as to whether such orders are properly classified as final or interlocutory."); *but see also Commerce Bank*, 5 F.3d at 37 (noting "[t]he same rationale [behind the flexible approach to finality] applies equally to an order of the bankruptcy judge as to an order of the district court.").

[5] This Court does not read *BH & P* and *F/S Airlease* as standing for the proposition that an order regarding appointment or disqualification of counsel is final for jurisdictional purposes in all circumstances.  Instead, both cases appear to leave open the possibility that, when weighing the factors associated with the relaxed finality standard (discussed below), an order granting an application for appointment of counsel could in certain circumstances, still be properly considered non-final.  One Third Circuit opinion has stated, without discussion, that a bankruptcy court order approving the debtor's application for retention of counsel was final for jurisdictional purposes.  *See In re First Jersey Sec., Inc.*, 180 F.3d 504, 508 (3d Cir. 1999).  Jurisdiction does not, however, appear to have been at issue in this case.  Thus, absent any statement by the Third Circuit to the contrary, this Court will follow the approach taken in *BH & P* and *F/S Airlease* and assess the relevant factors under the relaxed bankruptcy standard to determine on a case-by-case basis whether a given order in the bankruptcy context is final.  *See e.g.*, *Official Comm. of Unsecured Creditors of Life Serv. Sys., Inc. v. Westmoreland Cnty. MH/MR*, 183 F.3d 273, 277-79 (3d Cir. 1999) (concluding order was not final after applying factors associated with relaxed bankruptcy finality standard); *Dal-Tile Int'l, Inc. v. Color Tile, Inc.*, 203 B.R. 554, 556 (D. Del. 1996) (same); *accord Truong*, 513 F.3d at 94 (concluding a

The Order in this case does not arise in the adversary context, and the Court did not appoint counsel solely for the purpose of pursuing an adversary action. The bankruptcy court instead ordered the Trustee was "authorized to retain and employ Haviland Hughes, as special counsel to the Trustee in the within proceeding under Chapter 7 of the United States Bankruptcy Code." Ex. 2. The Order's express language does not suggest appointment of counsel was limited to prosecution of an adversary action or any narrowly drawn issue disconnected from the underlying bankruptcy proceedings.[6] In these circumstances, the Court reluctantly concludes the Order involves "[c]onsiderations unique to bankruptcy," *Truong,* 513 F.3d at 94, central to the reopened Chapter 7 proceedings.[7] This Court will therefore apply the relaxed, pragmatic standard to determine finality.

---

bankruptcy court order was not final under any standard when it "merely denied appellants' request for a hearing concerning an alleged conflict of interest on the part of the trustee").

[6] Although this Court declines to reach the merits of the appointment of counsel, it recognizes there is some question as to whether Haviland Hughes was appointed under 11 U.S.C. § 327(a) or (e). Section 327(a) permits the trustee, "with the court's approval, [to] employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a). Section 327(e) permits the trustee, with the court's approval, to employ "for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed." *Id.* § 327(e). Haviland Hughes was never employed by the Debtor, and counsel for the Trustee represented in his brief that the Application to employ Haviland Hughes was based upon § 327(a) and the citation to § 327(e) was a typographical error. While the Debtor argues on the merits that appointment of counsel was under § 327(e) (and therefore improper), he asserts for jurisdictional purposes that the Order was not for a specified special purpose, but rather "opens the scope of employment to all matters within the bankruptcy case." Debtor's Reply Br. 3.

[7] The Court reaches this conclusion reluctantly because there is some uncertainty as to whether orders by bankruptcy court judges concerning the appointment or disqualification of counsel involve considerations unique to bankruptcy. The Court in *Allegheny* concluded such orders do not implicate any considerations unique to bankruptcy, and at least one other district court within this Circuit agrees. *See Allegheny*, 107 B.R. at 522; *In re Sullivan*, No. 91-5501, 1992 WL

Having found that the relaxed standard is applicable, to determine whether jurisdiction lies under 28 U.S.C. § 158(a)(1), this Court must examine the finality of the Order in light of the following factors: "[1] the impact on the assets of the estate, [2] the preclusive effect of a decision on the merits, [3] the need for additional fact-finding on remand, and [4] whether the interests of judicial economy will be furthered." *See Commerce Bank v. Mountain View Vill., Inc.*, 5 F.3d 34, 37 (3d Cir. 1993). The impact on the assets of the estate is often regarded as the most important factor. *See In re Market Square Inn, Inc.*, 978 F.2d 116, 120 (3d Cir. 1992). When evaluating these factors, this Court must also keep in mind the policy underlying the relaxed finality standard—"to quickly resolve issues central to the progress of a bankruptcy." *In re Armstrong World Indus., Inc.*, 432 F.3d 507, 511 (3d Cir. 2005). These factors, addressed below, lead the Court to conclude the Order is not final even under the relaxed finality standard applicable in the bankruptcy context.

---

68613, at *3 (E.D. Pa. Mar. 31, 1992). Nevertheless, as discussed above, because this Order arises outside of the adversary action context, it appears the Third Circuit decisions in *BH & P* and *F/S Airlease* require this Court to apply the relaxed standard to determine whether the Order is final. *Cf. In re AroChem Corp.*, 176 F.3d 610, 619 (2d Cir. 1999) (noting although the majority of the appeals courts conclude district court orders reviewing bankruptcy court retention decisions are not final orders, the Third Circuit holds to the contrary, instead applying the factors associated with the relaxed standard applicable to bankruptcy appeals).

The Third Circuit has also stated "even in bankruptcy appeals the concept of finality is not open-ended. Orders that do not fully adjudicate a specific adversary proceeding or that require further factual development are governed by the ordinary finality precepts of routine civil litigation." *Truong*, 513 F.3d at 94 (quoting *United States v. Nicolet, Inc.*, 857 F.2d 202, 206-07 (3d Cir. 1988)). It is not entirely clear, however, why orders requiring further factual development (if they were issued outside of the adversary context, as they were in both *Truong* and *Nicolet*) would be governed by the traditional finality standard when the Third Circuit has also instructed that when assessing finality pursuant to the relaxed standard, a court must consider "the need for additional fact-finding on remand." *Commerce Bank*, 5 F.3d at 37. Because the Order at issue here may require further factual development, this is perhaps another reason why the relaxed standard does not apply. In any event, for the reasons set forth below, this Court concludes the April 3, 2013, Order is not final no matter which standard applies—traditional or relaxed.

10

First, while it is possible that the assets of the estate might be impacted as the bankruptcy proceedings progress, the Order on appeal will not affect the assets of the estate, and does not implicate any issues central to the progress of the proceedings.  The Debtor argues that because the primary role of the special litigation counsel is to determine whether the payments owed under the Consulting Agreement are a part of the bankruptcy estate, it necessarily follows that the distribution of the Debtor's assets is at issue.  *See In re Brown*, 803 F.2d 120, 122 (3d Cir. 1986) ("Where the issue is likely to affect the distribution of the debtor's assets, or the relationship among the creditors, the most pragmatic response will usually be to hear the appeal immediately.").  But as explained below, neither the Debtor's (nor the estate's) assets are at issue at this time because the bankruptcy court has not yet addressed the central issues that have the potential to affect those assets.[8]

Under the guise of evaluating the necessity to appoint special counsel, the Debtor encourages this Court to make the underlying merits determination and rule that the Consulting Agreement payments are exempt as post-petition wages.[9]  The Order, however, only appointed counsel to investigate this issue; the Order did not decide it.  It would not be appropriate for this

---

[8] The Debtor also argues because the Order provided for a contingency fee of fifty percent of all recovered collections, it will dissipate the Debtor's assets.  The Order, however, remains conditional and specifically provides that "any such compensation shall be paid only upon further application and approval of this Court."  Ex. 2; *see also In re Engel*, 124 F.3d 567, 571 (3d Cir. 1997) (holding "an order approving of a professional's retention under § 327 does not establish a right to be paid from the bankruptcy estate under § 330.").  Moreover, since special counsel was appointed on a contingency fee basis, any dissipation of the Debtor's assets would depend on the estate's recovery of assets.  If the payments associated with the Consulting Agreement are, as the Debtor contends, post-petition wages, the Order permitting retention of Haviland Hughes will have no effect whatsoever on the Debtor's assets.

[9] The Debtor also argues, in the alternative, that even if the payments associated with the Consulting Agreement were the property of the estate, the Trustee abandoned any interest the estate may have held in the Consulting Agreement payments.  This, of course, is disputed by the Trustee.

11

Court to decide on appeal an issue that was not addressed in the Order subject to appellate review. Because counsel was appointed to assist the Trustee in the underlying Chapter 7 proceedings, the Order may implicate considerations unique to bankruptcy, but the lack of a merits determination as to the central substantive issues driving the reopened Chapter 7 proceedings demonstrates the Order is insufficiently final for the Debtor to take an appeal as of right. Not only is the wages issue insufficiently developed and improperly framed for resolution by this Court, the Trustee expressly carved out the right to litigate this issue in the bankruptcy court. *See* Ex. 9 ¶ 4(c) (May 3, 2011, Stipulation and Consent Order). Any impact on the assets of the estate assumes the Debtor will lose on the merits of an issue that has not yet been litigated or resolved in the bankruptcy court, and upon which the Trustee expressly reserved the right to litigate in the bankruptcy court. Under these circumstances, the Order cannot be deemed final.

In addition, to the extent the investigation into the conduct surrounding the Consulting Agreement and the claims giving rise to the Contract Action may ultimately bear on the disposition of the estate's assets, the appointment of Haviland Hughes as counsel does not. The investigation will proceed whether or not it is led by Haviland Hughes. The district court in the Contract Action specifically transferred the Contract Action to the bankruptcy court "for a determination as to whether or not the subject of the contract at issue was properly reported to said court and considered by the Trustee during the pendency of Plaintiff's Chapter 7 Petition." Ex. 21. After the case was transferred, the Debtor filed a motion to transfer the case from the bankruptcy court *back* to the district court. *See* Ex. 22. In support, the Debtor made one of the same alternative arguments on the merits that he advances on this appeal, i.e., that the Trustee was previously aware of the Consulting Agreement, and by issuing a report of no distribution, he abandoned any claim to monies allegedly owed under the Consulting Agreement. The

12

bankruptcy court implicitly rejected this argument when it denied the Debtor's motion to transfer and reopened the Chapter 7 proceedings on February 6, 2013. The Trustee has elected to proceed with the investigation, and it is the order reopening the Chapter 7 proceedings that placed this investigation into motion. It is therefore the February 6, 2013, order that might ultimately bear on the disposition of the assets, but that order is not being challenged on appeal.

When considering the second factor associated with the relaxed finality standard, the Court concludes that its decision would not have a preclusive effect on the merits of further litigation. Even if the Court found Haviland Hughes to be conflicted and reversed the bankruptcy court Order, further investigation and litigation would proceed on the merits because, as discussed above, the Order appointing counsel merely facilitates an investigation already slated to occur.[10] If the Court were to affirm the Order, there would be no preclusive effect even as to the conflict of interest issue, because, as the *Allegheny* court rightly observed, "procession of this litigation will illuminate whether an actual conflict of interest exists." *Allegheny*, 107 B.R. at 522. Like the order at issue in *Truong* denying a request for a hearing regarding the trustee's alleged conflict of interest, the Order appointing Haviland Hughes to serve as the Trustee's counsel is "solely related to the conduct or progress of litigation before the bankruptcy court" and does not "dispose of any discrete claim or cause of action." *Truong*, 513 F.3d at 94. Under Third Circuit case law, such an order "cannot plausibly be termed final." *Id.*[11]

---

[10] The Court notes in this regard that on November 6, 2013, while this appeal was pending, the Trustee did in fact initiate an adversary action by filing a 22-count complaint against, among others, the Debtor.

[11] If this Court were to credit the Debtor's primary argument on appeal that special counsel is not needed because the assets at issue are nothing more than post-petition wages, such a ruling would have a preclusive effect on the merits of further litigation because it would effectively resolve all the outstanding issues associated with the reopened Chapter 7 proceedings. Again, however, this merits issue, not having been first addressed by the bankruptcy court, is not properly before this Court.

The final two factors associated with the relaxed finality standard also weigh in favor of finding the Order to be non-final. As addressed above, the need for additional fact-finding on remand is clear. Because the Trustee has decided to pursue the investigation and the bankruptcy court has reopened the case, there can be no doubt that further fact-finding will be necessary on remand however this Court decides the conflict of interest issue with respect to Haviland Hughes. Finally, hearing this appeal will not further the interests of judicial economy because the issues presented here may be mooted by a later decision of the bankruptcy court or by the outcome of the investigation.

Upon independently assessing each of the factors associated with the relaxed finality standard, this Court concludes that the Order is not final and Debtor has no right to appeal. Although the district court in *Philadelphia Newspapers, LLC v. Official Committee Of Unsecured Creditors*, 408 B.R. 585 (E.D. Pa. 2009), reached a different result on the finality issue, the Court finds this case is distinguishable. In *Philadelphia Newspapers*, the district court found final under the relaxed bankruptcy standard, a bankruptcy court order denying the debtors' application for appointment of special counsel and appointing a creditors committee to conduct an investigation into certain prepetition conduct associated with negotiations between the debtors and their secured lenders. *Id.* at 594.

The district court's conclusions in *Philadelphia Newspapers* appear to have been predicated on two important distinguishing factors: (1) the bankruptcy court's denial of the debtors' application for special counsel and (2) the impact that appointment of counsel would have had on the development of a Chapter 11 reorganization plan subject to an imminent deadline. These two factors, taken together, meant that absent review of the bankruptcy court's order, the debtors would lose the advice of their chosen counsel, and, because of the deadline for

filing a reorganization plan, the issue could not be revisited at a later time. *See id.* at 600. To the extent the deadline in *Philadelphia Newspapers* influenced the judicial economy, or any other factor in that case, such a concern is not present here for three reasons: (1) there is no comparable deadline implicated by the bankruptcy court Order in this case; (2) the bankruptcy court did not deny the Trustee his choice of counsel; and (3) the conflict determination regarding Haviland Hughes is preliminary and subject to further bankruptcy court approval of a fee application. These distinguishing factors, among others, make this case much different than the situation presented in *Philadelphia Newspapers*.[12]

---

[12] The interplay between the preliminary appointment of counsel under 11 U.S.C. § 327 and the ultimate award of reasonable compensation under 11 U.S.C. § 330 also illustrates why the Order cannot plausibly be considered final. *See Engel*, 124 F.3d at 575. In *Engel*, the Third Circuit held that even though a bankruptcy court had approved appointment under § 327(e), it was still required to review an application for compensation under § 330 because "Section 327 approvals are merely preliminary 'go aheads' rather than conclusive determinations." *Id.* at 572. Leaving aside the difficulty of construing an order granting a "preliminary go ahead" as sufficiently final for jurisdictional purposes, the Third Circuit's holding in *Engel* suggests the opportunity for meaningful review remains with the bankruptcy court when it grants an application for appointment of counsel. This opportunity for further review is perhaps lost when such an application is denied, a distinction which should be taken into account when considering the finality of an order involving appointment of counsel. *See In re Union Home & Indus., Inc.*, 376 B.R. 298, 302 (B.A.P. 10th Cir. 2007) (describing bankruptcy court orders granting employment to a professional as "purely interlocutory" and orders denying employment outright as final (citing *BH & P*, 949 F.2d at 1307)); Richard A. Bales, *The Nonappealability of Disqualification Orders in Bankruptcy Proceedings*, 4 J. Bankr. L. & Prac. 543, 547 (1995) (describing the "good reasons . . . for finding finality in an order *granting* disqualification but not in an order *denying* disqualification"); *accord In re Marvel Entm't Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998) (noting that "to delay the appeal of the order denying counsel until all matters in the bankruptcy have been conclusively determined is impractical").

When an order denying an application for counsel is coupled with a deadline for filing a Chapter 11 plan, as was the case in *Philadelphia Newspapers*, the balance weighing in favor of hearing the appeal immediately shifts even more. *See Phila. Newspapers*, 408 B.R. at 600 ("[A]lthough ostensibly, the denial of special counsel for this advisory role is without prejudice, because the need for advice concerning the recording incident's impact on the plan is needed now, it cannot be revisited later."); *see also In re Congoleum Corp.*, 426 F.3d 675, 686 (3d Cir. 2005) (finding insurers had standing to appeal an order confirming appointment of counsel under § 327(e) because "once a plan has proceeded to confirmation, orders involving retention of professionals are unlikely to get the attention they deserve"). Again, no considerations regarding

Having concluded the Order is not final, the Court must next address whether to exercise its discretion to hear an interlocutory appeal.[13]  Although § 158(a)(3) permits appeals of interlocutory bankruptcy court orders "with leave of the court," neither the statute nor the bankruptcy rules governing such appeals specify the criteria a district court should use to determine whether to grant leave to appeal.  In the absence of any statutory criteria, courts in this district have applied the standard in 28 U.S.C. § 1292(b), which governs interlocutory appeals from the district courts to the courts of appeal, and have permitted appeals from interlocutory bankruptcy court orders when (1) a controlling question of law is involved; (2) there are substantial grounds for a difference of opinion as to the question of law; and (3) an immediate appeal would materially advance the termination of the litigation.  *E.g.*, *In re Phila. Newspapers, LLC*, 418 B.R. 548, 556-57 (E.D. Pa. 2009), *aff'd*, 599 F.3d 298 (3d Cir. 2010); *In re Sandenhill, Inc.*, 304 B.R. 692, 693-94 (E.D. Pa. 2004); *In re Neshaminy Office Bldg. Assocs.*, 81 B.R. 301, 302 (E.D. Pa. 1987).  "The party seeking leave to appeal has the burden to establish all three criteria," *Patrick v. Dell Fin. Servs.*, 366 B.R. 378, 385 (M.D. Pa. 2007), and entertaining an appeal from an interlocutory order is only appropriate when the party seeking appellate review "establishes [that] exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. & Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989).

---

the confirmation of a plan in a Chapter 11 proceeding, or any other potentially lost opportunities, are present in this case.

[13] In his reply brief, the Debtor requested the Court consider his appeal pursuant to Federal Bankruptcy Rule of Procedure 8003(c).  This rule provides that the district court, in the absence of a motion for leave to appeal before it, may consider the notice of appeal as constituting the motion.

Immediate appeal from the Order will not materially advance the ultimate termination of this litigation. As discussed above, the issues presented in this appeal could be mooted by a later decision of the bankruptcy court, and fact-finding with respect to the conduct associated with the Contract Action has not yet begun. Further, the Debtor has not established the existence of any exceptional circumstances that would warrant discretionary review. Accordingly, this appeal will be dismissed.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.